FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

2021 JAN 11 PM 3:43

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

Anthony J. Tolino
concerning EEO complaint and Appeal Result/Decision

Plaintiff

Title VII Civil right act
Section 501 of Rehabilitation act
Title II Genetic information Non discrimination act

v.

Louis DeJoy
Post Master General
United States Postal Service - Agency

CASE NUMBER: 8:21 cv 69 T 02 TGW

Defendant

Appeal NOS: 2019004061 & 2019004062

Agency NOS:  1G-324-0008-18
             4G-324-0008-18
             1G-324-0008-17

my address: 1401 26th Ave. South
            St. Petersburg FL. 33705

Email: USPS02399478@gmail.com



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P.O. Box 77960
Washington, DC 20013

Anthony J. Tulino a/k/a
Junior T.[1]
Complainant,

v.

Louis DeJoy,
Postmaster General,
United States Postal Service,
Agency.

Appeal Nos. 2019004061 and 2019004062

Hearing No. 510-2017-00412X

Agency Nos. 1G-324-0008-18 and 1G-324-0003-17

DECISION

On May 27, 2019, Complainant filed two appeals with the Equal Employment Opportunity Commission (EEOC or Commission), pursuant to 29 C.F.R. § 1614.403(a), from the Agency's final decisions dated April 29, 2019 and May 17, 2019, concerning his equal employment opportunity (EEO) complaints alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e et seq., Section 501 of the Rehabilitation Act of 1973 (Rehabilitation Act), as amended, 29 U.S.C. § 791 et seq., the Age Discrimination in Employment Act of 1967 (ADEA), as amended, 29 U.S.C. § 621 et seq., and Title II of the Genetic Information Nondiscrimination Act of 2008, 42 U.S.C. § 2000ff et seq.

While the appeals were separately docketed, the Commission may, in its discretion, consolidate two or more complaints of discrimination filed by the same complainant. See 29 C.F.R. § 1614.606. Accordingly, the Commission exercises its discretion to consolidate the appeals herein. For the following reasons, the Commission AFFIRMS the Agency's final decisions.

---

[1] This case has been randomly assigned a pseudonym which will replace Complainant's name when the decision is published to non-parties and the Commission's website.

                                                    2                    2019004061 & 2019004062

## ISSUE PRESENTED

The issue presented is whether Complainant has shown by a preponderance of the evidence that the Agency subjected him to discrimination and a hostile work environment based on his race, national origin, color, genetic information, disability, age, and in reprisal for his protected EEO activity.

## BACKGROUND

At the time of events giving rise to this complaint, Complainant worked as an Electronic Technician at the Agency's Processing and Distribution Center in West Palm Beach, Florida.

Complainant alleged that the Manager of Maintenance Operation (RMO1[2], East Indian, brown, Guyanese, over 40), the Manager of Maintenance (RMO2, African American, light brown, American, over 40), and the Supervisor of Maintenance Operations (RMO3, Black American, black, African American, over 40) harassed and discriminated against him in the following two complaints. Additionally, Complainant asserted that another Manager of Maintenance Operations (RMO4, Caucasian, white, American, over 40) also discriminated against him in Complaint 2.

*Agency No. 1G-324-0003-17 ("Complaint 1")*

On February 16, 2017, Complainant filed an EEO complaint alleging that the Agency subjected him to a hostile work environment and discriminated against him on the bases of race (Caucasian), national origin (Italian), color (white), genetic information[3] (non-African, or non-Hispanic), and, disability (hearing impairment), when:

1.   on December 12, 2016, Complainant was issued a letter of warning for unsatisfactory performance; and,

2.   on dates to be specified, RMO1 harassed, singled him out, and verbally reprimanded him on the workroom floor.

The investigative record reflects the following pertinent matters relating to the subject claims. Complainant asserted that RMO1 issued him the December 12, 2016 Letter of Warning (LOW)[4]

---

[2] Responsible Management Official (RMO).

[3] Complainant asserted that he was discriminated against under the Genetic Information Nondiscrimination Act of 2008 (GINA) because he is non-Hispanic and Non-African. However, it appears that Complainant was asserting discrimination due to national origin. There is no allegation that Complainant, or any of his family members, were subjected to genetic tests, or was required to provide medical histories as part of his employment.

[4] This was later settled during a grievance procedure. The LOW was kept on file for one year.

3            2019004061 & 2019004062

alleged in claim 1, based on a personal, private matter between the two of them, and not his performance. The record demonstrated that the LOW was issued jointly by RMO1 and RMO3. The LOW was issued due to an incident which occurred on November 11, 2016. The LOW detailed that on that date, Complainant failed to follow standard operating procedures when he misdiagnosed a machinery malfunction, failed to notify a supervisor of the malfunction within the required fifteen-minute window, and then failed to follow instructions regarding repairs.

Regarding claim 2, Complainant provided several dates and examples which he stated demonstrated RMO1's harassment. The incidents regarded various incidents typically involving Complainant's performance while attending to a repair. The Agency detailed and responded to each incident listed.

RMO1, RMO2, and RMO3 stated that they were aware of Complainant's hearing impairment but stated that Complainant did not have any workplace limitations regarding his hearing impairment. Management noted that there was documentation regarding Complainant's asthma, but that he did not have any limitations due to his asthma[5]. There is no documentation that Complainant requested a reasonable accommodation due to his hearing or asthma. The record did contain documentation of Family and Medical Leave Act (FMLA) paperwork regarding Complainant's asthma, but not regarding his hearing. The record does not contain any requests for a reasonable accommodation due to his hearing or his asthma.

*Agency No. 1G-324-0008-18 ("Complaint 2")*

On March 6, 2018, Complainant filed a second EEO complaint alleging that the Agency subjected him to a hostile work environment and discriminated against him on the bases of race (Caucasian), color (White), age (66), disability (hearing impairment, asthma, arthritis, torn rotator cuff, allergies) and reprisal for prior protected EEO activity since June 12, 2017, and continuing, when:

    1.    on dates to be specified, Complainant's coworker (CW1) belittled him; made false statements against him; cursed and yelled at Complainant; invaded his personal space; questioned his qualifications; hindered his work; and, talked negatively about him to his coworkers;

    2.    on dates to be specified, RMO1 told Complainant that nobody likes him; that they all talk about him behind his back; that supervisors gave him favorable ratings to be rid of him; that he is perceived to be incompetent; and, that he is "weak in skill";

---

[5] Complainant's disability claim in Complaint 1 pertained to his hearing, but Complainant's asthma issues, were also discussed. Additionally, Complainant added other medical issues as part of his disability discrimination claim in Complaint 2.

4                           2019004061 & 2019004062

3. on dates to be specified, RMO1 stalked him at work and admonished his work performance in front of his coworkers and other supervisors;

4. on or around January 19, 2018, Complainant's request to move to Tour 2 was denied[6]; and,

5. on an unspecified date in 2018, Complainant became aware that management was inputting incorrect or falsified information regarding his absences in his PS Form 3972 (Absence Analysis).

The investigative record reflects the following pertinent matters relating to the subject claims. Complainant asserted that CW1 was generally hostile and belittling towards him. For example, Complainant asserted that CW1 would yell over the radios for Complainant to fix something; that CW1 would berate Complainant for attempting to consume shared food or coffee in a communal area; that CW1 would lie and state that Complainant walked away from repair requests; that CW1 would curse at him; and generally, that CW1 would demean Complainant. The record demonstrated that on February 22, 2018, an investigation was initiated by management based on Complainant's allegations of harassment. The investigation concluded that no corrective action needed to be taken. One coworker attested that CW1 essentially called Complainant incompetent. Six colleagues stated that Complainant performed poorly, and that others often had to complete repairs that Complainant supposedly repaired or had misdiagnosed.

Complainant also asserted that RMO1 told him that no one liked him; that others frequently talked about Complainant negatively; that people believed Complainant was incompetent at his job; and, that management wanted to get rid of him. Complainant also noted that RMO1 frequently admonished him in front of others, including an incident where RMO1 told him he was too slow for the job, and that he would have another employee finish the repair. Complainant asserted that he was publicly humiliated by all of these incidents. RMO1 acknowledged that he stated that Complainant, and other technicians, lacked in some skills as they took longer than normal to repair certain machines. However, RMO1 denied that the comment was made based on anything other than performance-based observations. RMO1 denied inappropriately admonishing Complainant in front of others or speaking inappropriately of him. He noted that he has had conversations with Complainant, in the presence of other management officials, where they discussed Complainant's performance. He denied admonishing Complainant. RMO1 denied ever saying that the Agency or management was trying to get rid of him, that no one liked him, or that he was incompetent.

Regarding a reasonable accommodation, Complainant asserted that he requested a microphone be attached to the radios so that he could hear calls better. Complainant asserted that RMO1 and RMO2 denied his microphone requests. However, both supervisors denied receiving such a request. The Agency noted that there was nothing on file that demonstrated this request.

---

[6] Complainant later testified that he did not believe that the denial of his request was discriminatory or had anything to do with his protected classes or Complaint1.

5                                              2019004061 & 2019004062

The Agency noted that what was on file was provided after Complainant filed his formal complaint and after the formal investigation was completed. Additionally, the Agency stated that the medical note provided made no specific mention of attaching a microphone to the radios to assist Complainant.[7] RMO1 stated that Complainant had previously informed him that he occasionally forgot to wear his hearing aids or change the batteries in them. However, RMO1 did not receive any informal or formal requests to accommodate Complainant based on his hearing. Complainant also noted that stress from work exacerbated his asthma, but medical documentation regarding his asthma, dated January 11, 2017, does not provide clinical findings to support this. The medical documentation only repeats Complainant's belief that some of his asthma issues appeared to be due to workplace stress.

Regarding the tour change, Complainant stated that he attempted to move to Tour 2 as a Building Equipment Mechanic (BEM). However, Complainant stated that the request was denied. RMO1 stated that he passed Complainant's request to RMO4. It was noted that while there were openings for a BEM, Complainant was not on the BEM register, and therefore would not be approved. Lastly, Complainant noted that he applied for a transfer to the Manasota Processing and Distribution Center. This transfer request was denied based on his time and attendance problems. Complainant asserted that RMO1 and RMO3 were purposefully inputting incorrect information in order to make him look bad. Specifically, that management inputted his FMLA leave requests incorrectly. The Human Resources Department reviewed the matter and informed Complainant of the results. Specifically, FMLA was applied several times through the years, but not for every absence. HR stated that this was due to Complainant's documentation. Not every absence was considered an FMLA protected absence because the documentation was either insufficient to establish eligibility, and/or because Complainant did not indicate the leave was for FMLA.

*Hearing Requests for Complaint 1 and Complaint 2*

The record demonstrates that the hearing requests for both complaints were, at some point, consolidated. Additionally, while Complainant initially requested a hearing, on March 21, 2019, the Administrative Judge (AJ) remanded the complaints to the Agency for the issuance of a final Agency decision based on Complainant's failure to comply with six of the AJ's orders regarding his hearing. The Agency issued two final decisions pursuant to 29 C.F.R. § 1614.110(b). The Agency concluded that Complainant failed to prove that the Agency subjected him to discrimination as alleged.

## CONTENTIONS ON APPEAL

On appeal, Complainant contends that the Agency repeatedly refused to grant him reasonable accommodations. For example, Complainant asserted that management was aware of his hearing impairment, and yet he was never accommodated, and actually was disciplined for not answering

---

[7] The doctor's note dated August 22, 2018, states that Complainant has significant hearing loss, and would benefit from any hearing assistance that could be provided. The Agency's final decision incorrectly listed the doctor's note as being dated April 20, 2018.

repair calls. Complainant also asserted that it was widely known that he was targeted for harassment, and yet no actions were ever taken to remedy the situation.

Complainant also asserted that the AJ's decision to dismiss his hearing request was overly harsh. Complainant asserted that he followed the AJ's orders to the best of his ability. Complainant requested that the Commission provide him with a hearing. Complainant also noted that he needed legal assistance and inquired about having an attorney assigned to assist him.

In response, the Agency asserted that Complainant failed to establish a prima facie case of discrimination and discriminatory harassment. The Agency asserted that management had previously articulated legitimate, non-discriminatory reasons for their actions and there is no evidence the reasons articulated are pretext to mask unlawful discrimination. Accordingly, the Agency requested that the Commission affirm the Final Agency Decisions and find no discrimination in either matter.

## STANDARD OF REVIEW

As this is an appeal from a decision issued without a hearing, pursuant to 29 C.F.R. § 1614.110(b), the Agency's decision is subject to de novo review by the Commission. 29 C.F.R. § 1614.405(a). See Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614, at Chapter 9, § VI.A. (Aug. 5, 2015) (explaining that the de novo standard of review "requires that the Commission examine the record without regard to the factual and legal determinations of the previous decision maker," and that EEOC "review the documents, statements, and testimony of record, including any timely and relevant submissions of the parties, and . . . issue its decision based on the Commission's own assessment of the record and its interpretation of the law").

## ANALYSIS AND FINDINGS

*Sanction*

The Commission's regulations afford broad authority for the conduct of hearings by Administrative Judges. See 29 C.F.R. § 1614.109 et seq.; Rountree v. Dep't of Treasury, EEOC Appeal No. 07A00015 (July 17, 2001). When a complainant or agency fails to comply with an AJ's order, an AJ may take action against the noncomplying party pursuant to 29 C.F.R. § 1614.109(f)(3), up to and including issuing a decision in favor of the opposing party. See 29 C.F.R. § 1614.109(f)(3)(iv). Sanctions must be tailored in each case to appropriately address the underlying conduct of the party being sanctioned. See Hale v. Dep't of Justice, EEOC Appeal No. 01A03341 (Dec. 8, 2000). A sanction may be used to deter the noncomplying party from similar conduct in the future, as well as to equitably remedy the opposing party. Id.

Specifically, our regulations provide that where a party, inter alia, fails to respond to an order of an AJ, the AJ may, as appropriate, take action against the non-complying party pursuant to 29 C.F.R. § 1614.109(f)(3), i.e., an AJ may: (1) draw an adverse inference that the requested information would have reflected unfavorably on the non-complying party; (2) consider the

7                                     2019004061 & 2019004062

requested information to be established in favor of the opposing party; (3) exclude other evidence offered by the non-complying party; (4) issue a decision fully or partially in favor of the opposing party; or (5) take other action deemed appropriate, e.g., payment of costs and expenses by the non-complying party. Id.

Considering the record, we find that AJ's dismissal of the hearing request, as a sanction, was narrowly tailored to what was objectively believed as Complainant's failure to follow orders. Based on the information and documentation that was before the AJ, we find the AJ's issuance of the sanction was not an abuse of discretion.

*Disparate Treatment*

Complainant alleges that he was subjected to disparate treatment. A claim of disparate treatment is examined under the three-part analysis first enunciated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). For a complainant to prevail, he must first establish a prima facie case of discrimination by presenting facts that, if unexplained, reasonably give rise to an inference of discrimination, i.e., that a prohibited consideration was a factor in the adverse employment action. McDonnell Douglas, 411 U.S. at 802, n. 13; Furnco Construction Corp. v. Waters, 438 U.S. 567 (1978). The burden then shifts to the agency to articulate a legitimate, nondiscriminatory reason for its actions. Tx. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). Once the agency has met its burden, the complainant bears the ultimate responsibility to persuade the fact finder by a preponderance of the evidence that the agency acted on the basis of a prohibited reason. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993).

This established order of analysis in discrimination cases, in which the first step normally consists of determining the existence of a prima facie case, need not be followed in all cases. Where the agency has articulated a legitimate, nondiscriminatory reason for its actions, the factual inquiry can proceed directly to the third step of the McDonnell Douglas analysis, the ultimate issue of whether complainant has shown by a preponderance of the evidence that the agency's actions were motivated by discrimination. U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 713-714 (1983).

For his claim of reprisal, Complainant must show that: (1) he engaged in a protected activity; (2) the agency was aware of the protected activity; (3) subsequently, he was subjected to adverse treatment by the agency; and (4) a nexus exists between the protected activity and the adverse treatment. Whitmire v. Dep't of the Air Force, EEOC Appeal No. 01A00340 (Sept. 25, 2000).

With respect to Complainant's disparate treatment claims, assuming arguendo, that Complainant established a prima facie case based on his protected classes[8] and in reprisal for his protected EEO activity, the Agency has articulated legitimate, nondiscriminatory reasons for its actions.

---

[8] For the purposes of analysis, we assume Complainant is an individual with a disability. 29 C.F.R. § 1630.2(g)(1).

8                                    2019004061 & 2019004062

In this matter, Complainant's allegations concern general workplace matters, such as: performance feedback on repairs; notations on the speed, efficiency, and effectiveness of his repairs; and following standard protocols and procedures when machinery malfunctioned. In each of the several incidents detailed, the Agency has provided legitimate, nondiscriminatory reasons. For example, Complainant asserted that he was targeted for disciplinary action when on December 12, 2016, he was issued a Letter of Warning (LOW). The record demonstrated RMO1 and RMO3 jointly issued the LOW following Complainant's poor performance during a November 11, 2016 incident. Specifically, that Complainant failed to timely inform management that a machine malfunctioned, waited longer than the standard 15 minutes to inform management, then misdiagnosed the malfunction. RMO1 noted that the failure to notify management can have a domino effect and it is, therefore, essential that management is put on notice when machinery malfunctions.

Complainant also noted that he was denied a tour change based on his protected classes and in reprisal. However, the record demonstrated that Complainant was attempting to shift positions, and as he is not registered to be a BEM, the position change request was denied. Complainant also argued that several of his FMLA leave requests were improperly entered. Here, there is no record that various management officials purposefully entered Complainant's leave requests improperly in order to make him look like a frequently absent employee. The record demonstrated that an HR official reviewed all the records and dates, as requested by Complainant, and noted that several dates were listed as FMLA approved. The HR official noted that other dates that were not listed as FMLA were due to insufficient paperwork demonstrating that it was eligible FMLA leave, or because Complainant did not mark it as such.

As the employer, the Agency has broad discretion to determine how best to manage its operations and may make decisions, including personnel decisions, on any basis except a basis that is unlawful under the discrimination statutes. Furnco Construction Corp. v. Waters, 438 U.S. 567 (1978); Texas Dep't. of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). An employer is entitled to make its own business judgments. The reasonableness of the employer's decision may, of course, be probative of whether it is pretext. Therefore, our analysis focuses on the Agency's motivation, not its business judgment. Loeb v. Textron, Inc., 600 F.2d 1003, 1012 n.6 (1st Cir. 1979). In other words, it is not the function of this Commission to substitute its judgment for that of management officials who are familiar with the needs of their facility, and who are in a better position to make decisions, unless other facts suggest that proscribed considerations of bias entered the decision-making process. Shapiro v. Soc. Sec. Admin., EEOC Request No. 05960403 (Dec. 6, 1996). Based on the record, there is no persuasive evidence to demonstrate that management's actions were motivated by discriminatory or retaliatory animus.

*Reasonable Accommodation*

In order to establish a prima facie case of disability discrimination under the Rehabilitation Act, a complainant must demonstrate that he is an "individual with a disability" within the meaning of the Act. An "individual with a disability" is defined as one who: 1) has a physical or mental impairment that substantially limits one or more of the major life activities of such individual; 2)

9                                        2019004061 & 2019004062

has a record of such impairment; or 3) is regarded as having such an impairment. 29 C.F.R. § 1630.2(g). Major life activities include, but are not limited to, "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). The Interpretive Guidance to the regulations further notes that "other major life activities include, but are not limited, to, sitting, standing, lifting, and reaching." 29 C.F.R. Part 1630 Appendix § 1630.2(j).

A qualified individual with a disability is an individual with a disability who satisfies the requisite skill, experience, education, and other job-related requirements of the employment position such individual holds or desires, and who, with or without reasonable accommodation, can perform the essential functions of such position. 29 C.F.R. § 1630.2(m).

Under the Commission's regulations, federal agencies may not discriminate against individuals with disabilities. The Agency is required to make reasonable accommodation for the known physical and mental limitations of qualified individuals with disabilities, unless the Agency can show that reasonable accommodation would cause an undue hardship. 29 C.F.R. §§ 1630.2 (o) and (p); EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act (Enforcement Guidance on Reasonable Accommodation), EEOC Notice No. 915.002 (Oct. 17. 2002); Barney G. v. Department of Agriculture, EEOC Appeal No. 0120120400 (December 3, 2015). Reasonable accommodation may include making facilities accessible, job restructuring, modifying work schedules, and other similar actions. Dennis v. Department of Education, EEOC Appeal No. 0120090193 (June 15, 2010); Spence v. Nuclear Regulatory Commission, EEOC Appeal No. 0120041082 (August 2, 2007), request for reconsideration denied, EEOC Request No. 0520070907 (July 9, 2008).

A request for a modification or change at work because of a medical condition is a request for reasonable accommodation. See Enforcement Guidance on Reasonable Accommodation at Question 1. After receiving a request for reasonable accommodation, an agency "must make a reasonable effort to determine the appropriate accommodation." 29 C.F.R. Part 1630, App. § 1630.9. Thus, "it may be necessary for the [agency] to initiate an informal, interactive process with the individual with a disability . . . [to] identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3); see also 29 C.F.R. Part 1630, App. § 1630.9; Enforcement Guidance on Reasonable Accommodation at Question 5.

Regarding any potential reasonable accommodation requests, there is also nothing in the record to demonstrate that Complainant had requested any accommodation for his hearing, his asthma, and other listed disabilities prior to the filing of his formal complaints. As such, we conclude that Complainant has not demonstrated that the Agency violated the Rehabilitation Act.

Regarding Complainant's August 22, 2018 medical note provided to the Agency after the formal investigation closed, we note that the medical documentation states that Complainant is hearing impaired. Furthermore, the August 22, 2018 note states that Complainant "would greatly benefit from any hearing assistance that could be provided to him."

10                         2019004061 & 2019004062

In consideration, we determine that this note is the first time Complainant has put the Agency on notice of his need for a reasonable accommodation regarding his hearing. We remind the Agency of its obligations under the Rehabilitation Act. In addition, we remind Complainant that if he has been denied a reasonable accommodation, he should contact the Agency's EEO Office.

*Unlawful Harassment*

In his harassment claim, in addition to the incidents discussed above, Complainant generally alleged that management subjected him to a hostile work environment when his complaints of workplace harassment went unheard, and when he was verbally reprimanded on the work room floor. We find that under the standards set forth in Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993), that Complainant's claim of a hostile work environment must fail. See Enforcement Guidance on Harris v. Forklift Systems, Inc., EEOC Notice No. 915.002 (Mar. 8, 1994). To prove his harassment claim, Complainant must establish that he was subjected to conduct that was either so severe or so pervasive that a "reasonable person" in Complainant's position would have found the conduct to be hostile or abusive. Complainant must also prove that the conduct was taken because of a protected basis – in this case, his race, color, national origin, genetic information, disability, and in reprisal. Only if Complainant establishes both of those elements – hostility and motive – will the question of Agency liability present itself.

Furthermore, a finding of a hostile work environment is precluded by our determination that Complainant failed to establish that any of the actions taken by the Agency were motivated by discriminatory animus. See Oakley v. U.S. Postal Serv., EEOC Appeal No. 01982923 (Sept. 21, 2000). As already concluded above, there is no evidence to support a finding that Complainant's protected bases or EEO activity played any role whatsoever in the Agency's actions.

Moreover, the responsible management officials provided legitimate, non-discriminatory explanation for its actions. For example, the variety of incidents listed by Complainant as harassing incidents were all incidents of general work place matters, such as the importance of reporting out-of-service machinery, and efficiency and effectiveness of repairs. We note that the discrimination statutes do not shield a complainant from a myriad of petty slights and annoyances. Rizzo v U.S. Postal Serv., EEOC Appeal No. 01A53970 (Aug. 29, 2005). Not every unpleasant or undesirable act which occurs in the workplace constitutes an EEO violation. See Shealey v. Equal Emp't Opportunity Comm'n, EEOC Appeal No. 0120070356 (Apr. 18, 2011) (citing Epps v. Dep't of Transp., EEOC Appeal No. 0120093688 (Dec. 19, 2009)). The Commission also recognizes that ordinary managerial and supervisory duties include assuring compliance with agency policy and procedures, monitoring subordinates, scheduling the workload, scrutinizing and evaluating performance, providing job-related advice and counsel, taking action in the face of performance shortcomings, and to otherwise manage the workplace. Erika H. v. Dep't of Transp., EEOC Appeal No. 0120151781 (June 16, 2017). In sum, Complainant failed to prove that his protected classes or EEO activity played any role in the incidents he proffered as evidence of his harassment claim.

11                                   2019004061 & 2019004062

## CONCLUSION

Based on a thorough review of the record and the contentions on appeal, including those not specifically addressed or referenced herein, we AFFIRM the Agency's findings that it did not discriminate or retaliate against Complainant as alleged in Complaint1 and Complaint2.

## STATEMENT OF RIGHTS - ON APPEAL
## RECONSIDERATION (M0620)

The Commission may, in its discretion, reconsider this appellate decision if the complainant or the agency submits a written request that contains arguments or evidence that tend to establish that:

1. The appellate decision involved a clearly erroneous interpretation of material fact or law; or
2. The appellate decision will have a substantial impact on the policies, practices, or operations of the agency.

Requests for reconsideration must be filed with EEOC's Office of Federal Operations (OFO) **within thirty (30) calendar days** of receipt of this decision. If the party requesting reconsideration elects to file a statement or brief in support of the request, **that statement or brief must be filed together with the request for reconsideration**. A party shall have **twenty (20) calendar days** from receipt of another party's request for reconsideration within which to submit a brief or statement in opposition. See 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), at Chap. 9 § VII.B (Aug. 5, 2015).

Complainant should submit his or her request for reconsideration, and any statement or brief in support of his or her request, via the EEOC Public Portal, which can be found at https://publicportal.eeoc.gov/Portal/Login.aspx.

Alternatively, complainant can submit his or her request and arguments to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, via regular mail addressed to P.O. Box 77960, Washington, DC 20013, or by certified mail addressed to 131 M Street, NE, Washington, DC 20507. In the absence of a legible postmark, complainant's request to reconsider shall be deemed timely filed if OFO receives it by mail within five days of the expiration of the applicable filing period. See 29 C.F.R. § 1614.604.

An agency's request for reconsideration must be submitted in digital format via the EEOC's Federal Sector EEO Portal (FedSEP). See 29 C.F.R. § 1614.403(g). Either party's request and/or statement or brief in opposition must also include proof of service on the other party, unless complainant files his or her request via the EEOC Public Portal, in which case no proof of service is required.

12                          2019004061 & 2019004062

Failure to file within the 30-day time period will result in dismissal of the party's request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. **Any supporting documentation must be submitted together with the request for reconsideration.** The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. See 29 C.F.R. § 1614.604(c).

### COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0610)

You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. If you file a request to reconsider and also file a civil action, **filing a civil action will terminate the administrative processing of your complaint.**

### RIGHT TO REQUEST COUNSEL (Z0815)

If you want to file a civil action but cannot pay the fees, costs, or security to do so, you may request permission from the court to proceed with the civil action without paying these fees or costs. Similarly, if you cannot afford an attorney to represent you in the civil action, you may request the court to appoint an attorney for you. **You must submit the requests for waiver of court costs or appointment of an attorney directly to the court, not the Commission.** The court has the sole discretion to grant or deny these types of requests. Such requests do not alter the time limits for filing a civil action (please read the paragraph titled Complainant's Right to File a Civil Action for the specific time limits).

FOR THE COMMISSION:

_（signature）_
Carlton M. Hadden, Director
Office of Federal Operations


October 29, 2020
Date

13  2019004061 and 2019004062

## CERTIFICATE OF MAILING

**For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was provided to the parties.** I certify that on the date below this decision was provided to the following recipients via the means identified for each recipient:

Anthony J. Tulino
1401 26th Avenue South
Saint Petersburg, FL 33705
Via U.S. Mail

U.S. Postal Service
NEEOISO - Appeals
U.S. Postal Service
Via FedSEP


October 29, 2020
Date

_____
Compliance and Control Division